[No. E016015. Fourth Dist., Div. Two. Jan. 28, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
ADRIAN GUTIERREZ, Defendant and Appellant.

[No. E017122. Fourth Dist., Div. Two. Jan. 28, 1997.]

In re ADRIAN GUTIERREZ on Habeas Corpus.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, IV, VI, VII, VIII, IX, and X.

**COUNSEL**

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle B. Davis and Demetra P. Lewis, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RICHLI, J.**—After a jury trial, defendant Adrian Gutierrez (defendant) was convicted of possession of drug paraphernalia, namely, a hypodermic syringe, while in jail or prison (Pen. Code, § 4573.6). Enhancement allegations

that defendant had served two prior felony prison terms (Pen. Code, § 667.5, subd. (b)) were found true. Allegations for purposes of the three strikes law (Pen. Code, § 667, subds. (b)-(i)) that defendant had four prior serious or violent felony convictions were also found true. As a result, defendant was sentenced under the three strikes law to 25 years to life, plus 1 year on each of the 2 prior prison term enhancements, for a total of 27 years to life.

Defendant has filed both an appeal and a petition for writ of habeas corpus. We consolidated the habeas petition with the appeal for the limited purpose of deciding whether to issue an order to show cause.

In his petition for habeas corpus, defendant contends that the trial court erred by excluding evidence that a jail deputy—the only witness against him—lied, and tried to intimidate another deputy into lying, during an investigation into his alleged use of excessive force against jail inmates. Defendant also contends that his trial counsel rendered constitutionally ineffective assistance by failing to make an offer of proof regarding the deputy's intimidation attempt.

In defendant's appeal, he contends that the trial court erred by:

1. Failing to instruct the jury that a specific intent to use the syringe to inject a controlled substance was an element of the crime.

2. Denying defendant's motion for acquittal, which was based on lack of evidence that the syringe was operable.

3. Denying defendant's *Trombetta* motion,[1] which was based on the People's failure to preserve the syringe.

4. Ruling that posting the provisions of the statute prohibiting possession of drugs or drug paraphernalia in jail was not an element of the crime.

5. Using defendant's prior convictions as "strikes," while also using the resulting prior prison terms as the basis for one-year enhancements.

6. Imposing two separate prior prison term enhancements, where the evidence showed that defendant's prior convictions resulted in only a single prison term.

7. Using prior convictions suffered before the effective date of the three strikes law as "strikes."

---

[1]*California* v. *Trombetta* (1984) 467 U.S. 479 [104 S.Ct. 2528, 81 L.Ed.2d 413].

8. Imposing a three strikes term of 25 years to life where such a sentence constituted cruel and unusual punishment.

9. Refusing to exercise its discretion to strike defendant's prior felony convictions under Penal Code section 1385.

With respect to defendant's conviction, we find no error. With respect to defendant's sentence, the People concede that the trial court erred by imposing two 1-year prior prison term enhancements (issue No. 6). In addition, we hold that the trial court erred by refusing to consider striking defendant's prior felony convictions (issue No. 9). Otherwise, we find no error.

I

FACTUAL BACKGROUND

Deputy Ralph J. Waddy was the only witness at trial. Waddy supervised inmates at the West Valley Detention Center in Rancho Cucamonga. The detention center is used to hold accused persons during trial and before sentencing.

On March 24, 1994, when defendant was an inmate in the detention center, Waddy saw defendant make a "drug gesture" to another inmate. First, defendant put his right hand to his left, "as though injecting his arm with [a] needle." Next he pointed to himself, "as though he had some drug paraphernalia or . . . drugs."

Waddy decided to relocate defendant, in order to break up any "drug connections" in defendant's unit. As part of the relocation, he searched defendant. He ordered defendant to remove his clothes, bend over, squat and cough. When defendant did so, Waddy saw a "plastic object" sticking out of defendant's anus.

At this point, Waddy signaled to another officer, who was able to look down into the room where the search was being conducted, and had him observe the rest of the search. Waddy told defendant to remove the plastic object and put it on the ground. It was a cellophane-wrapped package. Waddy, wearing plastic gloves, picked it up and opened it. Inside, he found an empty hypodermic syringe and needle. The back part of the needle had been cut off. Otherwise, it appeared to be an ordinary, commercially manufactured syringe.

Waddy did not book the syringe into evidence. Instead, he made a photocopy of it, then discarded it. He explained that people working in the

property room had been getting stuck by "needles . . . poking out of evidence bags." He did not test the syringe before discarding it.

When inmates are booked into the detention center, they are given a pamphlet listing the detention center's rules. These rules prohibit possession of a syringe.

## II

## DEFENDANT'S PETITION FOR WRIT OF HABEAS CORPUS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

### SPECIFIC INTENT TO USE THE SYRINGE TO INJECT A CONTROLLED SUBSTANCE

██  Defendant contends that the trial court erred by failing to instruct the jury that a specific intent to use the syringe to inject a controlled substance was an element of the crime.

Penal Code section 4573.6 (section 4573.6) provides, as pertinent here:

"Any person who knowingly has in his or her possession in any state prison, . . . or in any county, city and county, or city jail, . . . or any place or institution, where prisoners or inmates are being held under the custody of any sheriff, chief of police, peace officer, probation officer, or employees, . . . any controlled substances, . . . any device, contrivance, instrument, or paraphernalia intended to be used for unlawfully injecting or consuming controlled substances, without being authorized to so possess the same . . . , is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years.

"The prohibitions and sanctions addressed in this section shall be clearly and prominently posted outside of, and at the entrance to, the grounds of all detention facilities under the jurisdiction of, or operated by, the state or any city, county, or city and county."

The required mental state is "knowingly." The words "intended to be used" apply to the "device, contrivance, instrument, or paraphernalia." The passive "intended" need not refer to the intent of any particular person; in penal statutes, "intended" frequently refers to the intent of someone other

---

*See footnote, *ante*, page 380.

than the defendant. For example, it is a felony willfully or maliciously to install an inoperable fire alarm system; "fire alarm system" is defined, in part, as a device "*intended* to cause an alarm or warning of fire." (Pen. Code, § 386, italics added.) This intent can hardly be that of the defendant. Similarly, it is a felony maliciously to place a substance hard enough to break a saw into a tree "*intended* to be harvested." (Pen. Code, § 593a, subd. (a), italics added.) The defendant's likely intent is that the tree *not* be harvested.

Section 4573.6 is related to, and to be construed together with, Penal Code sections 4573 and 4573.5, which prohibit bringing or sending drugs or drug paraphernalia into a prison or jail. (*People* v. *Buese* (1963) 220 Cal.App.2d 802, 807 [34 Cal.Rptr. 102].) Obviously, the ultimate evil with which the Legislature was concerned was drug use by prisoners. Nevertheless, it chose to take a prophylactic approach to the problem by attacking the very presence of drugs and drug paraphernalia in prisons and jails. (See *People* v. *Waid* (1954) 127 Cal.App.2d 614, 617 [274 P.2d 217].)

In *People* v. *Rodriquez* (1975) 50 Cal.App.3d 389 [123 Cal.Rptr. 185], a case decided by this court, the defendant was convicted of possession of a deadly weapon in county jail (Pen. Code, § 4574). Another prisoner testified that he owned the weapon in question—a piece of razor blade—and that he used it for handicrafts. (50 Cal.App.3d at p. 393.) On appeal, the defendant argued that the specific intent to make violent use of the weapon was an element of the crime. (*Id.,* at p. 394.)

We disagreed: "Section 4574 proscribes possession, not use, as noted above. Therefore, the statute is concerned with the potential of the item in question. Reading the statute as a whole, it is evident the Legislature enacted no halfway measure. Effective protection of inmates and officers from armed attack depends upon prohibition of possession of *all* deadly weapons in jail. [Citation.] This valid legislative objective does not except weapons with dangerous capabilities which also have innocent uses. . . . [T]he statute '. . . serves an objective demanding relative inflexibility and relatively strict liability. . . . It is one of the "stringent statutes governing prison safety." [Citation.]' . . . It is plain a razor blade's potential for use as a deadly weapon does not depend on an intended violent use.

"Evidence of harmless use by jail inmates, including defendant, may be relevant if it bears on the likelihood that an item will cause death or serious bodily injury. Such evidence is defensive, however. It is not necessary for the People to prove the item has no harmless use. Such a construction of section 4574 would effectively nullify its purpose." (*People* v. *Rodriquez,*

*supra*, 50 Cal.App.3d at p. 396, quoting *People* v. *Wells* (1968) 261 Cal.App.2d 468, 478-479 [68 Cal.Rptr. 400] [discussing Penal Code section 4502], quoting *People* v. *Romo* (1967) 256 Cal.App.2d 589, 595 [64 Cal.Rptr. 151].) Section 4573.6 similarly prohibits possession, not use; it is similarly concerned with the potential of the item in question. Even assuming defendant did not intend the syringe to be used to inject drugs, its mere presence in the jail posed the threat that *some* prisoner *would* use it for this purpose.

Section 4573.6 was originally enacted in 1949. (Stats. 1949, ch. 833, § 3, p. 1583.) Much later, in *Hoffman Estates* v. *Flipside, Hoffman Estates* (1982) 455 U.S. 489 [102 S.Ct. 1186, 71 L.Ed.2d 362], the United States Supreme Court upheld an ordinance which prohibited the sale of drug paraphernalia, defined in terms of items "designed or marketed for use" with illegal drugs, against a challenge that it was void for vagueness and overbreadth. As a result, subsequently enacted statutes which prohibit the sale of drug paraphernalia usually define "paraphernalia" in terms of items "designed" or "marketed" for use with illegal drugs. (E.g., Health & Saf. Code, § 11014.5, subd. (a); see generally, *People* v. *Nelson* (1985) 171 Cal.App.3d Supp. 1, 14-15 [218 Cal.Rptr. 279].) "Designed" refers to the intent of the manufacturer; it describes " ' "an item that is principally used with illegal drugs by virtue of its objective features, i.e., features designed by the manufacturer." ' " (*A & B Cattle Co.* v. *City of Escondido* (1987) 192 Cal.App.3d 1032, 1044 [238 Cal.Rptr. 580], quoting *People* v. *Nelson, supra*, 171 Cal.App.3d at p. Supp. 10, quoting *Hoffman Estates* v. *Flipside, Hoffman Estates, supra*, 455 U.S. at p. 501 [102 S.Ct. at pp. 1194-1195].) "Marketed," on the other hand, refers to the intent of the perpetrator; " ' "a retailer could scarcely 'market' items 'for' a particular use without intending that use." ' " (*A & B Cattle Co.* v. *City of Escondido, supra*, 192 Cal.App.3d at pp. 1044-1045, quoting *People* v. *Nelson, supra*, 171 Cal.App.3d at p. Supp. 10, quoting *Hoffman Estates* v. *Flipside, Hoffman Estates, supra*, 455 U.S. at p. 502 [102 S.Ct. at p. 1195].)

We believe "intended to be used" has essentially the same meaning. Thus, an item is "intended to be used for unlawfully injecting or consuming controlled substances" if the defendant (1) actually intends it to be so used, or (2) should know, based on the item's objective features, that it is intended to be so used. Under this standard, possession of a bong in prison is a crime, regardless of the defendant's intended use; possession of a paper clip, by contrast, is not a crime unless the defendant in fact intends it to be used as a roach clip. This standard furthers the legislative intent of keeping drugs and drug paraphernalia out of prisons, while at the same time avoiding the problems potentially posed if the defendant's guilt could be predicated on

the unknown intent of another. (See generally, *People* v. *Nelson, supra,* 171 Cal.App.3d at pp. Supp. 15-17.)

We conclude that the trial court did not have to instruct the jury that a specific intent to use the syringe to inject a controlled substance was an element of the crime.

## IV

### EVIDENCE THAT THE SYRINGE WAS OPERABLE*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## V

### POSTING THE PROVISIONS OF SECTION 4573.6 AS AN ELEMENT OF THE CRIME

As noted, section 4573.6 provides: "The prohibitions and sanctions addressed in this section shall be clearly and prominently posted outside of, and at the entrance to, the grounds of all detention facilities . . . ."

At the beginning of trial, the prosecution asked the trial court to rule on whether such posting was an element of the offense. Defense counsel argued that it was. The trial court opined that posting would have to be proved in a "parking lot-type situation," but ruled that it was not an element in this case. At the close of trial, defendant raised the issue again; the trial court repeated its ruling, adding, "I don't want you to argue it." Finally, defendant filed a motion for new trial, arguing, among other things, that the trial court had erred in ruling that posting was not an element of the offense. The trial court denied this motion.

■ In this appeal, defendant contends yet again that such posting is an element of the crime, and therefore that the trial court erred in failing to instruct on this element, and in barring argument on it. Defendant further contends that because there was no evidence that the provisions of the statute were posted outside the detention center in this case, there was insufficient evidence to support his conviction.

■ " '[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining that intent, we first examine the words of the respective statutes: 'If

---

*See footnote, *ante,* page 380.

there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]" ' [Citation.]" (*People* v. *Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232], quoting *People* v. *Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224], and *Lennane* v. *Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976], respectively.)

▮ Here, the provisions defining the substantive offense are in the first paragraph of section 4573.6; the provisions requiring posting are in the second paragraph. The definition of the crime is complete in itself. It does not incorporate or refer to the posting provisions in any way. It neither makes posting an element of the crime, nor lack of posting a defense.

The legislative history of section 4573.6 only reinforces this conclusion. In 1990, the Legislature amended Penal Code sections 4573 through 4573.6 and added Penal Code sections 4573.8 and 4573.9, all of which deal generally with bringing, sending or having drugs in prison or jail. (Stats. 1990, ch. 1580, p. 7553.) As part of these amendments, the posting requirement was added, not only to section 4573.6, but also to each of the other sections. At the People's request, we have taken judicial notice of certain legislative history materials pertaining to the 1990 amendments. These indicate that the Legislature was particularly concerned with the fact that drugs were being brought into prisons by both visitors and correctional personnel, and that it was trying to provide additional deterrents to importation. It seems reasonable to conclude that the posting requirement was not intended to alter the substantive elements of the offense (and particularly not in a way that would make it harder to prove), but rather to provide an additional deterrent.

Defendant argues that in the absence of a posting requirement, a defendant's lack of knowledge that possession of drug paraphernalia is prohibited would be an affirmative defense, which the defendant would have the burden of proving. He concludes that the posting requirement was intended to shift this burden of proof; thus, instead of the defendant having the burden of proving lack of knowledge, the People have the burden of proving posting (i.e., constructive knowledge). The flaw in this argument is that, "[a]s the old saying goes, 'Ignorance of the law is no excuse.' " (*People* v. *Mills* (1992) 6 Cal.App.4th 1278, 1291 [8 Cal.Rptr.2d 310].) There was no burden to be shifted.

The Legislature *can* make posting an element of a crime, and has done so clearly in other statutes. (E.g., Pen. Code, §§ 313.1, subd. (f) [making it a

crime to add pornography to rented video; "[i]t shall be a defense . . . that the video rental store failed to post a sign, reasonably visible to all customers, delineating the provisions of this subdivision."], 553-555 [making it a crime to trespass on "posted property," defined as property with signs prohibiting trespassing], 594.1, subd. (d) [making it a crime to possess spray paint in a "posted" public facility, defined as one with a sign prohibiting possession], 602, subd. (i) [making it a crime to build a fire on land owned by another, "where signs forbidding trespass are displayed"], 647e [making it a crime to possess open container of alcohol on "posted premises" of liquor store, defined as premises "on which clearly visible notices" prohibit possession].) Because section 4573.6 lacks any similar language stating that posting is an element of the crime, we hold that it is not.

VI-X*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

XI

### DISPOSITION

The petition for writ of habeas corpus is dismissed. The judgment as to conviction is affirmed. The judgment as to sentence is reversed, and the case is remanded to the trial court with the following directions. The trial court shall exercise its discretion with respect to whether it should strike one or more of defendant's "strike" priors under Penal Code section 1385. Thereafter, it shall resentence defendant in a manner not inconsistent with the views expressed in this opinion.

Ramirez, P. J., and Hollenhorst, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 30, 1997.

*See footnote, *ante*, page 380.